UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

KORAN WILKINS,

                  Plaintiff,

    -against-

SUPERINTENDENT THOMAS M. POOLE;
COMMISSIONER GLENN S. GOORD;
DEPARTMENT SUPERINTENDENT DAVID
F. NAPOLI; HEAD COUNSELOR FRANK
RHODES; SERGEANT THOMAS HAPPELL;
LIEUTENANT JAMES M. MINDE; CAPTAIN
GRAFTON ROBINSON; CORRECTIONS
COUNSELOR ROBERTO BELMONTE,
collectively in their individual and official
capacities,

                Defendants.

----------------------------------------------------------x

**COMPLAINT**

NO:

**Jury Trial Demanded**

Plaintiff, Koran Wilkins ("Mr. Wilkins") by his attorneys, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, based on personal knowledge as to himself and upon information and belief as to all other matters, alleges as follows:

## I.    NATURE OF THE ACTION

1.    Plaintiff brings this action for compensatory and punitive damages for Defendants' violations of his rights under the Eighth Amendment to the United States Constitution by displaying deliberate indifference in: (1) denying him protective custody despite repeated, specific warnings that he feared attack; (2) failing to implement adequate weapons control policies that would have prevented his injuries; (3) placing him in the very block which housed two of his known enemies; and (4) failing to ensure adequate staffing in the housing unit and common areas to prevent an attack.

2.    Prison is an exceedingly dangerous place in which the only protection given to inmates is that provided by the superintendent and staff. Prison officials may not turn a blind eye to the risk that inmates will attack each other. On

numerous occasions, Mr. Wilkins had warned the staff of the Five Points Correctional Facility ("Five Points") that he had received threats of harm and was in serious danger of being attacked by other inmates who were members of the Bloods gang ("Bloods"). Mr. Wilkins even named the inmate he believed would eventually order the attack, and specified which housing unit—Eight Block—posed the most danger.

3.      The Five Points superintendent and staff utterly failed to respond to Mr. Wilkins's warnings. They repeatedly refused requests for protective custody or transfer to another facility. In fact, one counselor told Mr. Wilkins that "something had to happen to him" before he could receive protective custody.

4.      Furthermore, Defendants did not regularly search the inmates and their cells on Eight Block for shanks[1] and other weapons.

5.      Finally, Defendants failed to adequately staff the housing unit and common areas on Eight Block to prevent the attack.

6.      Simply stated, the Defendants were deliberately indifferent to Mr. Wilkins's safety and well-being. Left unprotected and placed in harm's way, Mr. Wilkins was brutally attacked by another inmate with a fashioned weapon and sustained serious, permanent injuries.

## II.      PARTIES

7.      Plaintiff Koran Wilkins was at all times relevant hereto a prisoner in the custody of the State Department of Corrections and incarcerated at Five Points. Mr. Wilkins was released on parole and currently resides in New York, New York.

8.      Defendant Glenn S. Goord was at all times relevant hereto the Commissioner of the Department of Correctional Services ("DOCS"). Upon information and belief, he retired sometime in 2006.

---

[1] A home made knife.

9.     Defendant David F. Napoli was at all times relevant hereto the Department Superintendent of Security.  Upon information and belief, he is currently employed as the Superintendent of Southport Correctional Facility.

10.     Defendant Thomas M. Poole was at all times relevant hereto the Superintendent of Five Points.  Upon information and belief, he retired sometime in 2007.

11.     Defendant Frank Rhodes was at all times relevant hereto the Head Counselor at Five Points.  He is currently employed at Elmira Correctional Facility, Elmira, New York.

12.     Defendant Roberto Belmonte ("Belmonte") was at all times relevant hereto a Corrections Counselor at Five Points.  He worked at Five Points from August 17, 2000 through March 15, 2007.  He is currently employed at Sing Sing Correctional Facility, Ossining, New York.

13.     Defendant Thomas Happell ("Happell") was at all times relevant hereto a Sergeant at Five Points.  He worked at Five Points from August 23, 2003 through the day of the attack, May 9, 2005.  He is currently employed at Gowanda Correctional Facility, Gowanda, New York.

14.     Defendant Grafton Robinson ("Robinson") was at all times relevant hereto a Corrections Captain at Five Points.  He worked at Five Points from May 13, 2004 through September 24, 2007.  He is currently employed at Butler Correctional Facility, Red Creek, New York.

15.     Defendant James M. Minde ("Minde") was at all times relevant hereto a Sergeant at Five Points.  He is currently employed at Sing Sing Correctional Facility, Ossining, New York.

16.     At all times relevant to the events described in this Complaint, all the Defendants acted under the color of state law.

### III.    JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as a case arising under the laws of the United States; under §1343(a)(4), as a case seeking damages pursuant to an act of Congress providing for the protection of civil rights; and under 42 U.S.C. §1983, as a case seeking to enforce rights secured by the laws of the United States.

18.    Venue properly lies in this district pursuant to 28 U.S.C. §1391(b)(2), because the events giving rise to this cause of action occurred at Five Points in Romulus, New York, which is located in Seneca County, within the Western District of New York.

### IV.    FACTUAL ALLEGATIONS

19.    In early 2005, Mr. Wilkins was transferred to Five Points Prison. He was placed in the general population.

20.    In early March 2005, Mr. Wilkins began to receive regular threats from certain members of the Bloods. These threats stemmed from a prior altercation at Riker's Island Mr. Wilkins had with a member of the Bloods, Shaheim Hagens (03-A-5877), called Hollywood (hereinafter "Hollywood"), who had been transferred to Ten Block on February 27, 2005. The Bloods made clear to Mr. Wilkins that they were intent on carrying out retribution against him. Mr. Wilkins received these threats at mealtimes and other times when he was exposed to the general population.

21.    On March 4, 2005, Mr. Wilkins notified staff that he feared for his safety and was moved to Nine Block. This move, however, proved insufficient a protective measure, and Mr. Wilkins refused to go outdoors during the time allotted and was reluctant to leave his cell at all, for fear of being attacked. He made a written request on March 10, 2005 seeking protection and, at this point, was granted protective custody.

22.    Just five days later, Defendant Minde submitted a memorandum to his superior, Lieutenant Byrne, noting, in part, that Mr. Wilkins had identified

4

"Hollywood" and informed Minde that he was "being plotted against." Nevertheless, Minde refused to recommend protective custody for Mr. Wilkins.

23.     On March 17, 2005, undersigned counsel, at that time representing Mr. Wilkins in a criminal appeal, wrote a letter to the Head Counselor at Five Points. The letter emphasized the importance of Mr. Wilkins's remaining in protective custody, and underscored the reality of the threats by the Bloods against him and the credibility of his fear.  The letter stated in part, "The reality of possible bodily harm and serious injury to Mr. Wilkins cannot be overstated. . . . As his attorney, I am extremely concerned for Mr. Wilkins's safety and well-being.  He should be allowed to remain in protective custody for the time being." *See* Exhibit 1, letter by counsel, dated March 17, 2005.

24.     This request notwithstanding, on March 21, 2005, Mr. Wilkins was ordered to return to the general population, specifically to the Eight Block.  Mr. Wilkins strenuously protested and said that he would "be cut by the Bloods" if he were returned to the general population.  Plaintiff's fear was so great that he refused to return to the general population and requested to speak to a counselor.

25.     During an interview with Defendant Belmonte, Mr. Wilkins again stated that he had received specific threats that he would be cut by the Bloods if returned to the general population. Rather than protecting him from harm or offering assistance of any kind, Belmonte told Mr. Wilkins that "something had to happen to him" before he could come back to protective custody.

26.     When Mr. Wilkins refused to return to the general population, he was censured and written up for failure to obey orders.  A report made by Defendant Happell on March 21, 2005 shows that Mr. Wilkins warned Happell that he "would be cut by the Bloods" if forced to reside on Eight Block. *See* Exhibit 2, Inmate Misbehavior Report, dated March 21, 2005.

27.     On March 27 and March 29, 2005, Mr. Wilkins was given a Tier III hearing on the charge that he refused a direct order for refusing to return to the general population and refusing double bunking. During the hearing, Mr. Wilkins repeated the threats and renewed his request for protective custody from the leaders of the Bloods on

5

Eight Block. Defendant Robinson conducted the hearing. During the hearing, Mr. Wilkins specifically identified known Blood leaders who resided on Eight Block: Justin Hightower (03-A-2589) ("Hightower") and Mark Elliot (91-A-6883) ("Elliot") who would likely order his attack, because "Hollywood told them." He also again explained that Hollywood was the original cause of his problems with the Bloods, due to an altercation with Hollywood at Riker's Island.

28.     In a last ditch attempt to get Defendant Robinson to take his concerns seriously, Mr. Wilkins showed him the aforementioned letter from his criminal appeal attorney that underscored the seriousness of the threats.

29.     Robinson, however, blithely dismissed the letter by undersigned counsel, in part, because her name did not appear on the firm letterhead.[2] Defendant Robinson also characterized Mr. Wilkins's information on his enemies as "vague," despite the fact that Mr. Wilkins provided Hollywood's name, physical description and cell assignment.

30.     At the conclusion of the hearing on March 29, 2005, Robinson rejected Mr. Wilkins's request for protective custody, noting "[f]rom what I can tell here you have listed no problem with anybody on this particular [Eleven] Block, and advised Mr. Wilkins to write to his counselor to request protective custody. Robinson noted that Mr. Wilkins would "never see" Hollywood, Hightower, or Elliott because he would be housed in Eleven block. Mr. Wilkins countered that he would still see them at certain times and repeatedly stated: "I don't want to get hurt." Robinson assured Mr. Wilkins that inmates in Eight Block (i.e. Hightower and Elliott) and inmates in Eleven Block "do not commingle."

31.     Following the hearing, as a punishment for refusing to return to the general population in Eight block, Mr. Wilkins was sent to solitary confinement until May 4, 2005. *See* Exhibit 3, Superintendent Hearing Report, dated March 29, 2005.

---

[2]     Only the names of the firm's partners appear in the letterhead, and the undersigned is an associate with the firm.

32.     While in solitary confinement, Mr. Wilkins had another interview with Defendant Belmonte and again repeated the threats he had received from the Bloods, and that he knew he would be cut if he were returned to the general population.

33.     After he was released from solitary confinement, Mr. Wilkins was moved—without explanation or justification—to Eight Block, despite his repeated warnings that Hightower and Elliott, the leaders of the Bloods on Eight Block, would see to it that he would be cut.

34.     On May 9, 2005, as Mr. Wilkins was returning from the Eight Block yard during "go-back"[3] time, he was approached from behind by another inmate and slashed in the face with a shank as he was about to reenter the building. Even though "go-back" time is known to be a particularly dangerous time for inmates, there were no corrections officers near Mr. Wilkins to offer him any protection.

35.     Corrections Officer Cragle ("Cragle") observed Mr. Wilkins directly after the attack. Mr. Wilkins told Cragle that he was cut from behind by another inmate, whom he could not see, while the inmates were returning from the yard.

36.     Mr. Wilkins was sent to the medical unit and was found to have a four-inch cut on the right side of his face. He received 23 stitches on his face. Officer Cragle made out an incident report. *See* Exhibit 5, Incident Report, dated May 9, 2005.

37.     Corrections officers later found a shank fashioned from a can lid with a jagged edge in the Eight Block yard near the wheelchair ramp. The lid had been cut to form a serrated edge and was wrapped with a piece of paper to form a handle. The weapon, which was two inches in length, was placed in a contraband locker.

38.     The Five Points investigation later determined that inmate Hall (04-A-0075) was the perpetrator. Inmate Hall was a known member of the Bloods who resided on Eight Block. At the time of the assault, Hightower was also present in the yard.

---

[3] Time when inmates return to cells from the yard.

39.     Mr. Wilkins remained in the medical unit for three days and complained of tremendous pain to his face and ear.  He was denied adequate pain medications and could not sleep due to the pain.

40.     Mr. Wilkins suffered serious physical, emotional and psychological trauma as a result of the attack.  He has endured flashbacks of the incident and nightmares of the attack in which he is being cut.  He continues to experience serious depression and anxiety to this day.

41.     After being released from the medical unit, Mr. Wilkins was placed in protective custody.

42.     Mr. Wilkins repeatedly requested to be transferred to another facility.  In early July 2005, Mr. Wilkins was told that his request to be transferred had been approved, yet he still remained at Five Points.

43.     On or about July 29, 2005, Mr. Wilkins was finally transferred from Five Points to Great Meadow Correctional Facility.

## V.     CAUSES OF ACTION

44.     Mr. Wilkins repeats and re-alleges each of the allegations contained in paragraphs 1 through 43 above.

### Count I

45.     Mr. Wilkins repeatedly warned the Defendants that he would be attacked.  The Defendants, however,  showed deliberate indifference to Mr. Wilkins by failing to move him to protective custody and protect him from harm.  Worse, the Defendants acted with deliberate indifference by moving Mr. Wilkins to the very same block where his known enemies resided.

46.     Further, the Defendants showed deliberate indifference by failing to implement an adequate weapons control policy by regularly searching inmates and their cells for shanks and other weapons.

47.     Finally, the Defendants showed deliberate indifference by failing to ensure a sufficient number of guards in the yard and on the block to prevent an inmate-on-inmate assault with a weapon during "go-back" time.

48.     These failures violated Mr. Wilkins's rights under the Eighth Amendment to the United States Constitution and 42 U.S.C. §1983.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment against each of the Defendants, jointly and severally, and requests as follows:

1.     An Order entering judgment for Plaintiff and against Defendants;

2.     An award to Plaintiff of compensatory and punitive damages;

3.     An award to Plaintiff of costs and attorneys' fees in this action;

4.     An award to Plaintiff of interest on the foregoing sums; and

5.     Such other relief as is just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all the issues that may be so tried.

Dated: May 7, 2008

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____
         Kristy M. Tillman
         Kathrin Ellermann

1285 Avenue of the Americas
New York, NY  10019-6064
Ktillman@paulweiss.com
Kellermann@paulweiss.com
(212) 373-3000

Attorneys for Plaintiff Koran Wilkins

10

RECYCLED

Exhibit 1

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

**FILE COPY**

| | HOW MAILED | | | |
|---|---|---|---|---|
| Delivered by: 212-373-3417 | Ordinary ☑ | Registered ☐ | Mailed by ___ | File No.: |
| Time: | Air Mail ☐ | Certified ☐ | Postage ___ | Matter: |
| Date: 212-492-0417 | Special Delivery ☐ | Express Mail ☐ | Enc. ☐ Date 1 8 | |

ktillman@paulweiss.com

March 17, 2005

Via Facsimile & US Mail

Head Counselor
Five Points Correctional Facility
State Road 96, P.O. Box 119
Romulus, New York 14541

Koran Wilkins, No. 04A2326

Dear Sir:

I write on behalf of my client Koran Wilkins to emphasize the importance of his remaining in protective custody. Since arriving at Five Points Correctional Facility, Mr. Wilkins has been threatened numerous times by multiple gang members and seriously believes he will be attacked if he is returned to the general population. Therefore, he strongly desires to remain in protective custody and has expressed serious concern to me about being returned to the general population.

Mr. Wilkins has reported to me that many of these threats stem from a prior altercation he had with a gang member at Riker's Island who is now also at Five Points; this person is intent on carrying out retribution on Mr. Wilkins, either directly or through other gang members. The reality of possible bodily harm and serious injury to Mr. Wilkins cannot be overstated. For example, even when he was in the general population, he refused to go outdoors during the time allotted out of fear of being attacked.

Head Counselor                                                          2


        As his attorney, I am extremely concerned for Mr. Wilkins's safety and
well-being.  He should be allowed to remain in protective custody for the time being.    In
addition to providing him safety, this will allow him to focus on his appeal without fear
of futher threats or likely attacks.  Please call me if you need to discuss this further.

                          Very truly yours,


                        Kristy Tillman



cc:     Koran Wilkins

RECYCLED

Exhibit 2

FORM 2171A (4/01)

STATE ( NEW YORK - DEPARTMENT OF CORRECTIONAL ( VICES

_Five Points_  **Correctional Facility**

## INMATE MISBEHAVIOR REPORT ♦ INFORME DE MAL COMPORTAMIENTO DEL RECLUSO

| 1. NAME OF INMATE (Last, First) ♦ NOMBRE DEL RECLUSO (Apellido, Nombre) | NO. ♦ NÚM. | HOUSING LOCATION ♦ CELDA |
|---|---|---|
| Wilkins, Koran | 04A2326 | 12C246B |

| 2. LOCATION OF INCIDENT ♦ Lugar del incidente | INCIDENT DATE ♦ FECHA | INCIDENT TIME ♦ HORA |
|---|---|---|
| 12 C2 46B | 3-21-05 | 12 30 pm |

**3. RULE VIOLATION(S) ♦ VIOLACIÓN/ES**

106.10 Direct Order.
109.12 Facility Movement
109.15 Double-cell assignments

**4. DESCRIPTION OF INCIDENT ♦ DESCRIPCIÓN DEL INCIDENTE**

On 3-21-05 inmate Wilkins 04A2326 was informed
that he had been denied protective custody and would
be moving into 8-block. This inmate stated that he
would be cut-by the bloods if put in general population.
He was given several direct orders by this writer
to exit his cell with his property and move to
8-block. All of this orders were disobeyed and the
inmate stated he would rather go to SHU. This
inmate was moved to 12A16T. Before he could
be put in 12A16T he requested to speak to MHU
staff. After speaking with MHU staff he was
placed in MHU cell #6.

| REPORT DATE ♦ FECHA | REPORTED BY ♦ NOMBRE DE LA PERSONA QUE HACE EL INFORME | SIGNATURE ♦ FORMA | TITLE ♦ TÍTULO |
|---|---|---|---|
| 3-21-05 | T. Happell | T. Happell | Sgt. |

**5. ENDORSEMENTS OF OTHER EMPLOYEE WITNESSES (if any)**   SIGNATURES:

ENDOSOS DE OTROS EMPLEADOS TESTIGOS (si hay)   FIRMAS:   1. _CO S. Guild_

2. _____   3. _____

NOTE: Fold back Page 2 on dotted line before completing below.

**6. WERE OTHER INMATES INVOLVED?**   YES ☐   NO ☒   IF YES, GIVE NAME & #

**7. AT THE TIME OF THIS INCIDENT, WAS INMATE UNDER PRIOR CONFINEMENT/RESTRICTION?**   YES ☒   NO ☐   OR _PC Pending_

AS A RESULT OF THIS INCIDENT, WAS INMATE CONFINED/RESTRICTED?   YES ☒   NO ☐

**8. WAS INMATE MOVED TO ANOTHER HOUSING UNIT?**   YES ☒   NO ☐

IF YES, (a) CURRENT HOUSING UNIT _12A16T_   (b) AUTHORIZED BY _Lt. Sanders_

**9. WAS PHYSICAL FORCE USED?**   YES ☐   NO ☒   (IF YES, FILE FORM 2104)

AREA SUPERVISOR ENDORSEMENT _Sgt. T. Happell_

13 bed
Highdower 8

Elliot - 8

KL Hollywood

C-2
10 block - 35T ~~scars~~ —

C-2-35T 03A5877 crip
[redacted]

Downstate 11/6/03 218 days

10 A-2-35T - Rosado Hollywood 103/2 106.00
B-2-35T Smith 116.10

TYPE 3 : CASE DATA WORK SHEET

INCIDENT DATE: 3-21-05

INTERPRETER REQUESTED: YES/NO
SPANISH COPY PROVIDED: YES/NO
ASSISTANCE REQUESTED: YES/NO
EVIDENCE: YES/NO LOCKER-N/A

VIDEO REQUESTED:   YES/NO
REQUEST SUBMITTED: YES/NO
WITNESSES:

INMATE NAME: Wilkins, Koran          DIN: 04A6320   HOUSED: 12-A1-G1

SERVED: 3-23-05   TIME: 937 A/AM/PM

SERVING OFFICER SIGNATURE: _T. Flanagan CO_

*********************************************************************************
Case must be heard within (7) days *if confined*, and the inmate must be given the opportunity to
select and use of an Assistant. If the inmate is released from confinement prior to the (7) day
limitation, he must have at least (24) hours to prepare a defense. If the inmate is *not confined*, the
case must be heard within (15) days of the date of the misbehavior report. An extension may be
granted by request to the Department Counsel and approval.
INMATE ATTENDANCE AT TIER HEARING IS VOLUNTARY

SERVED UPON INMATE:

☑ Misbehavior Report (pages)
___ Misbehavior Report (Spanish - pages)
___ Admin Seg. Recommendation
___ IPC Recommendation
___ Religious Services Notification

☒ Chapter V (Dir. 4932)
Inmate has been offered a copy. If
accepted inmate has been informed
that failure to return this copy at
time of hearing may result in
disciplinary proceedings for restitution.

*Urinalysis Testing
___ Request for Urinalysis Test
___ Urinalysis Procedure Form
___ Appendix C (Directory 4937)
___ SYVA Emit-st Result Card
___ Medical Certification
*Contraband Drug Testing
___ Req. Test/Suspected Contraband Drugs
___ Contraband Test Procedure
___ Appendix C (Dir. 4938)
___ NIK Individual Test Instructions

Koran Wilkins ; DIN#04A3320
INMATE SIGNATURE          DIN#

_T. Flanagan CO_
SERVING OFFICER

3/23/05
DATE

3-23-05
DATE

Two signature required if inmate refuses to sign:

SERVING OFFICER: _____/_____   WITNESS SIGNATURE: _____/_____   DATE

cgh 10/03

# FIVE POINTS CORRECTIONAL FACILITY: TIER ASSISTANCE SELECTION

INMATE: Wilkins, Koran   DIN 04A2326 LOCATION 12A1-6T

In accordance with the provisions of Part 251C, Chapter V, you are entitled to select an Assistant from a list established at this facility to assist you in connection with charges of misbehavior filed on   3-21-05   . Please choose three (3) names from the list below.

De acuerdo con las provisiones de la parte 251C del capitulo V, usted tiene derecho a seleccionar un assistente de la lista estableccida por la institucion para asistir a usted en connexion con los cargosn su contra el dia _____ . Favor de seleccionar tres (3) nombrea de la lista establecida.

The right to select an Assistant has been explained to me and:
(X) I wish to select 3 of the following
(  ) Mi derecho a seleccionar 3 assistente ha sido explicado

| | | |
|---|---|---|
| COGGIOLA, J. | EDLEN, J. | ▓▓▓▓▓ |
| ▓▓▓▓▓▓ | SULLIVAN, E. | SAMPSON, S. |
| BARRY, L. | BOGDAN, T. | JANIS, G. |
| ▓▓▓▓▓▓ | MCCLELLAN, D. | DOXSTADER, D. |
| LUNDUSKI, D. | EDWARD, J. | FOOSE, W. |
| DELMAR, T. | MCKEE, M. | HANLEY, R. |
| ✓ FARNEY, K. | ▓▓▓▓▓ | ✓ LOFTUS, J. |
| CALL, S. | BARKEE C. | SCHRADER, D. |
| HESSE, S. | ✓ EDICK, A. | SCHILLACE, M. |
| FLYNN, D. | WALSH, T. | ▓▓▓▓▓ |
| FOOTE, G. | BABINEAUX, R. | PARISH, S. |
| O'CONNOR, S. | BENTLEY, D. | |
| ▓▓▓▓▓ | JOHNSON, E. | MINGES, K. |
| | | ▓▓▓▓▓ |

## SPANISH SPEAKING:

_____ R. HERNANDEZ          _____ R. BELMONTE

The right to select an Assistant has been explained to me and:
( ✓ ) I wish to waive my right to an Assistant

Mi derecho a seleccionar un assistente ha sido explicado a mir:
(   ) Yo declino el derecho a seleccionar un assistente.

Koran Wilkins , 04A2326 , 3/23/05 ,
INMATE'S NAME (PRINT)   DIN NO.   DATE   SIGNATURE

T. byers CO , T. byrn CO , 3-23-05 ,
OFFICER'S NAME (PRINT)   SIGNATURE   DATE

_____ / _____ / _____ / _____
INMATE REFUSES TO SIGN   WITNESS (PRINT)   SIGNATURE   DATE

4/2/04

# FIVE POINTS CORRECTIONAL FACILITY
## ASSISTANCE FORM FOR TIER 3

DATE ASSIGNED: 3/23/05
TO: Stephen Parish                    INMATE NAME: Wilkins, Koran

DIN NO. 04A2326   HOUSED: 12-A1-06B INC. DATE: 3/21/05 REPORT DATE: 3/21/05
*****************************************************************************************

PURSUANT TO SECTION 251-4.2 OF CHAPTER V, YOUR ROLE IS TO ENSURE THAT THE INMATE
UNDERSTANDS THE CHARGES, INTERVIEW POTENTIAL WITNESSES IDENTIFIED BY THE INMATE AND
REPORT THE RESULTS OF YOUR EFFORTS TO THE INMATE. YOU MAY ALSO BE REQUESTED TO
OBTAIN RELEVANT DOCUMENTARY EVIDENCE TO ASSIST IN THE PREPARATION OF THE INMATE'S
DEFENSE OF THE CHARGES.

I INITIALLY MET WITH THE INMATE ON  3/23/05  at  1:47  AM/**PM**

_____ WANTS VIDEO: YES/**NO**         NEEDS INTERPRETER: YES/**NO** _____

THE INMATE HAS REQUESTED THE FOLLOWING INMATES AS POTENTIAL WITNESSES TO BE INTERVIEWED:

| NAME: | DIN NO: | CELL LOCATION: | TESTIFY: |
|-------|---------|----------------|----------|
|       |         |                | YES/NO   |
|       |         |                | YES/NO   |
|       |         |                | YES/NO   |

THE INMATE HAS REQUESTED THE FOLLOWING STAFF TO BE INTERVIEW AS POTENTIAL WITNESSES:

| NAME: | NOTIFIED: |
|-------|-----------|
|       |           |
|       |           |
|       |           |

| REQUESTS: | ACTION TAKEN: |
|-----------|---------------|
| no requests |             |
|           |               |
|           |               |
|           |               |
|           |               |
|           |               |
|           |               |
|           |               |
|           |               |

I HAVE INTERVIEWED WITNESSES AND ASSISTED THE INMATE AS REQUESTED AND REPORTED THE RESULTS. I
HAVE ALSO ATTACHED COPIES OF EVERYTHING THAT WAS GIVEN TO THE INMATE FOR THIS ASSISTANCE.

Koran Wilkins                          3/23/05
(INMATE SIGNATURE)                     DATE

Stephen Parish                         3/23/05
(ASSISTANT SIGNATURE)                  DATE

INMATE REFUSES TO SIGN: WITNESSED BY: _____   TITLE: _____

RECYCLED

Exhibit 3

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES   PAGE: 1
SUPERINTENDENT HEARING DISPOSITION RENDERED

03/21/05
HEP004

FIVE POINTS                          TAPE NUMBER 05175

DIN: 04A2326 NAME: WILKINS, KORAN          LOCATION: MH-00-106

INCIDENT DATE & TIME:     03/21/05   12:20 PM   TIER 3

REVIEW DATE:              03/21/05          BY: LT HUBBARD

DELIVERY DATE & TIME:     3/23/05  9:37 AM  BY: CO Talgers

HEARING START DATE & TIME: 3/27/05  11:08 AM  BY: Capt Robinson

HEARING END DATE & TIME:  3/29/05  3:32 pm  BY: Capt Robinson

WAS THERE NEED FOR A FORMAL MENTAL HEALTH/INTELLECTUAL CAPACITY ASSESSMENT? (Y) N

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | DISPOSITION |
|---|---|---|---|
| 106.10 | REFUSING DIRECT ORDER | SGT HAPPELL | Guilty |
| 109.12 | MOVEMENT REGULATION VIOLATION | | Guilty |
| 109.15 | REFUSE DOUBLE-CELLING | | Not Guilty |

(BL)

ANY GUILTY DISPOSITION WILL RESULT IN A MANDATORY DISCIPLINARY SURCHARGE IN THE AMOUNT OF FIVE ($5.00) DOLLARS BEING ASSESSED AUTOMATICALLY AGAINST THE INMATE.

| PENALTY CODE | DESCRIPTION | PENALTY MO DAYS | START DATE | RELEASE DATE | SUSPEND MO DAYS | DEFERRED MO DAYS | RESTITUTION $$$$ . ¢¢ |
|---|---|---|---|---|---|---|---|
| B000 | Keeplock | 90 | 3/21/05 | 5/4/05 | 45 | 180 | |
| F000 | Packages | 90 | 3/21/05 | 5/4/05 | 45 | | |
| F000 | Commissary | 90 | 3/21/05 | 5/4/05 | 45 | | |
| G000 | Phone | 90 | 3/21/05 | 5/4/05 | 45 | | |

HEARING RECORD

REVIEW OFFICER  LT  HUBBARD
REVIEW DATE      03/21/05 TIER 3
C.R. DATE 06/12/2009 M.E. DATE 10/12/2012

QMH SAT UNIT OR ICP

1) NAME WILKINS, KORAN                    DIN    0462326 LOCATION MH-00-106
2) INCIDENT DATE  03/21/05  INCIDENT TIME  12:20 PM
3) INMATE  WAS   CONFINED
4) INMATE WAS NOT  RELEASED BY REVIEW
5A) SERVING OFFICER _CO Telfopan____  SERVING DATE/TIME _3/23/05  9:37A_
5B) RELEASED FROM PREHEARING CONFINEMENT? _NO_
AUTHORIZED PERSON _____NA_____ DATE AUTHORIZED _NA_
6) ASSISTANT NAME _____S Parish____
7) INTERVIEW DATE _3/23/05_  INTERVIEW TIME _1:47pm_
8) EXTENSION NUMBER _____NA_____ (IF APPLICABLE)
9) IF APPLICABLE, CHECK REQUIRED DRUG TESTING FORMS PROVIDED TO INMATE
PURSUANT TO DIRECTIVE 4937 OR 4938
TEST REQUEST FORMS _NA_  TEST PROCEDURE FORMS _NA_
TEST RESULT FORMS _NA_ APPENDIX C _NA_ OTHER (SPECIFY) _NA_
10) INMATE _IS_ ENGLISH SPEAKING
A) IF NOT, WERE CHARGES TRANSLATED AND SERVED TO INMATE? _NA_
B) INTERPRETOR AT HEARING _____NA_____ TIME _NA_
11) HEARING BEGIN DATE _3/27/05_ TIME _NA_ END DATE _3/29/05_ TIME _3:34pm_
12) CHARGES: SPECIFY INMATE'S PLEA TO THE CHARGES CONSIDERED AT THE HEARING

| CHARGE NUMBER | DESCRIPTION OF CHARGES | REPORTED BY | INMATE'S PLEA |
|---|---|---|---|
| 106.10 | REFUSING DIRECT ORDER | SGT HAPPELL | Guilty |
| 109.12 | MOVEMENT REGULATION VIOLATION | SGT HAPPELL | Guilty |
| 109.13 | REFUSE DOUBLE-CELLING | SGT HAPPELL | Not Guilty |

SIGNATURE OF INMATE X Koran Wilkins
DATE 3/27/05  TIME 11:47am
13) WITNESSES: IF NONE REQUESTED, CHECK HERE _____
A) REQUESTED BY INMATE       TESTIFIED    IN INMATE'S PRESENCE
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
B) REQUESTED BY HEARING OFFICER  TESTIFIED   IN INMATE'S PRESENCE
confidential OMH testimony   Y_✓ N___   Y___ N_✓
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
_____  Y___ N___   Y___ N___
NOTE: IF ANY WITNESS IS DENIED OR IF A REQUESTED WITNESS TESTIFIES OUTSIDE THE
PRESENCE OF THE INMATE CHARGED, AND/OR THE INMATE IS NOT PERMITTED TO
REVIEW TESTIMONY OF SUCH WITNESS, FORM 2176 EXPLAINING THE REASON FOR THAT
DETERMINATION MUST BE GIVEN TO THE INMATE AND INCLUDED AS PART OF THE RECORD.

HEARING OFFICER SIGNATURE: J. Robinson

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES - FIVE POINTS

DCP004            SUPERINTENDENT HEARING DISPOSITION RENDERED

DIN: 04A2326 NAME: WILKINS, KORAN            HEARING DATE: 3/29/05

A. STATEMENT OF EVIDENCE RELIED UPON: The written report of Sgt Happell, that states you refused to move to 8 block on 3/21/05. Your verbal admission to refusing to move to 8 block on 3/21/05 stating you wanted P.C. He explained that your request for PC was denied and you were to move to general population. You are currently double bunked in general population. Confidential OMH testimony has been taken and considered.

B. REASONS FOR DISPOSITION: Five Points CF is a double bunked correctional facility and refusing to move is disruptive to facility operations. To deter this type of conduct by you and others.

C. SPECIAL INSTRUCTION ON VISITATION OR CORRESPONDENCE RESTRICTIONS, REFERRALS OR SPECIAL EVENT LOSS:

I HAVE RECEIVED A COPY OF THIS HEARING DISPOSITION DATED: 3/28/05

_G.Robinson_                    _K Koran Wilkins_  3/28/05  3:34 pm
HEARING OFFICER SIGNATURE        INMATE SIGNATURE   DATE & TIME RECEIVED

YOU ARE HEREBY NOTIFIED OF THE FOLLOWING APPEAL PROCEDURES:

___ FOR TIER II HEARINGS-APPEAL TO SUPERINTENDENT WITHIN 72 HOURS.

_X_ FOR TIER III HEARINGS-APPEAL TO COMMISSIONER WITHIN 30 DAYS.

RECYCLED

Exhibit 4

STATE OF NEW YORK                PRINTED AT
                      DEPARTMENT OF CORRECTIONAL SERVICES      05/19/05  08:36 AM
                             UNUSUAL INCIDENT REPORT


  FIVE POINTS                    FAC CODE 370     FAC LOG# 050035     CCC# 190518

  INCIDENT DATE   05/09/05  TIME 02:30 PM   LOCATION  YARD

  TELEPHONE DATE  05/09/05  TIME 05:33 PM

       PERSON CALLING      LT    BARRETTE
       PERSON RECEIVING    CAPT  GARY CONSTANT

  REPORT DATE     05/19/05    PERSON REPORTING SUPER  THOMAS M. POOLE

                    USE OF FORCE  NO              WEAPON USED  YES

  *************************************************************************

  ASSAULT                  (02) 01
   ON INMATE

  *************************************************************************

  DESCRIPTION:

    AT APPROX. 02:30 DURING THE (8) BLK. YARD LET-IN INMATE WILKINS (04A2326)
  WAS OBSERVED BY CO CRAGLE TO HAVE A CUT ON THE RIGHT SIDE OF HIS FACE.
  THIS INMATE TOLD CO CRAGLE THAT HE WAS CUT FROM BEHIND BY AN UNKNOWN INMATE
  WHILE IN THE YARD.AT THE TIME OF THIS INCIDENT THERE WERE APPROX. 100
  INMATES IN THE 8 BLK. YARD. INMATE WILKINS LOCKS IN CELL 08-C2-35B.

  *************************************************************************

  EVENTS CAUSING:

    INMATES FROM 8 BLOCK YARD WERE RETURNING TO BLOCK.

  *************************************************************************

  ACTION TAKEN:

    INMATE WILKINS WAS SEEN BY NURSE MOSES  AND FOUND TO HAVE A 4 INCH CUT ON
  THE RIGHT SIDE OF HIS FACE THAT WAS CONSISTANT WITH A CUTTING TYPE WEAPON,
  THAT REQUIRED 23 STICHES.ALL MOVEMENT FROM THE YARD WAS STOPPED AND THE
  REMAINING INMATES PAT FRISKED  (NCF).WILKINS CELL WAS FRISKED (NCF).(8) BLK
  YARD WAS FRISKED AND A CAN LID (2) INCH BY (1) INCH WITH A PAPER AND TAPE
  HANDLE ON ONE SIDE AND A JAGGED EDGE ON THE OTHER WAS FOUND BY CO
  VILLENUVE. WEAPON WAS PLACED IN THE CLASS (A) LOCKER. INMATE WILKINS PLACED
       IN KEEPLOCKED STATUS AND HOUSED IN THE INFIRMARY.PHOTOS TAKEN REPORTS
  FILE. DSS NAPOLI NOTIFIED.INVESTIGATION CONTINUES. REQUIRED STICHES WERE
  APPLIED BY FACILITY STAFF.
  FURTHER INVESTIGATION INDICATES THAT INMATE HALL (04A0075) WAS THE PERP.

  *************************************************************************

(13 pg.

```
PAGE   2                     STATE OF NEW YORK              PRINTED AT
                     DEPARTMENT OF CORRECTIONAL SERVICES    05/19/05  08:36 AM
                            UNUSUAL INCIDENT REPORT
```

FIVE POINTS                  FAC CODE 370    FAC LOG# 050035    CCC# 190518

INCIDENT DATE  05/09/05  TIME 02:30 PM   LOCATION  YARD

                USE OF FORCE  NO               WEAPON USED  YES

************************************************************************

MEDICAL REPORT:
 1-1/2" RIGHT CHEEK & 1-1/4" UNDER RIGHT EAR LOBE; 1" ABRASION RIGHT NECK

   D. YEOMANS              /NURSE                  05/09/05  03:15 PM
              EXAMINER NAME/TITLE                   EXAM DATE/TIME

************************************************************************

PROPOSED DISCIPLINARY ACTION:

 104.13, 106.10, 118.23, 100.13, 104.11

************************************************************************

PROPERTY DAMAGE:

 NA

************************************************************************

NOTIFICATION (FAMILY):

 NA

NOTIFICATION (POLICE/OTHER):

 DSS NAPOLI

************************************************************************
                         INMATE INFORMATION:
************************************************************************

████████████████        ████████████████████████████████

████████████████████████████████████████████████████████

************************************************************************

 WILKINS, KORAN                     04A2326  DOB 05/09/1974 ETHNIC - BLACK

    GEN INCIDENT - SPECIFIC INCIDENT   ROLE    WEAPON      FORCE     INJURY
    ASSAULT      - ON INMATE           VICTIM  UNR/CUTTNG            LACERATION

FORM 2171A (Rev. 3/93)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

FIVE POINTS
Facility

## INMATE MISBEHAVIOR REPORT

1) Name of Inmate  Wilkins (Last)   Koran (First)   No. 04A2326   Housing Location 8 C2-35B

2) Location of Incident  8 B1 High side Gallery near console   Incident Date 5-9-05   Incident Time Approx 2³⁵pr

3) Rule Violation(s)  104.13 Disturbance  106.10 Direct order  118.23 Inmates shall Promptly Report Injuries  100.13 Fighting  104.11 Violent Conduct

4) Description of Incident  On 5-9-05 At Approx 2³⁵pm I was Positioned on the End of 8 B1 Gallery to observe 8 building upper deck go back from the 8 building yard. I noticed Inmate Wilkins 04A2326 walking thru the B1 yard door with his knit cap on and Pulled Low over his Right cheek. When Inmate Wilkins Exited the Gallery, I gave him a direct order to come to where I was Standing he ignored me I then gave him a Second Direct order to Stop and to walk over to me This Time he he looked at me but Still Refused to comply. I gave him a Third Direct order and started to walk towards him when he Finally complied. As he Approached me I gave him a direct order to Remove his Knit cap to which he complied. As he took off his Knit cap I observed what appeared to be a Cut on his upper Right cheek. I immediately Placed Inmate Wilkins on the wall in a Pat Frisk Position and Notified the Sgt. During The Course of the go back Approx 60 Inmate were Present When I confronted Inmate Wilkins Several inmates Stop and/or Slowed down to watch what was happening. Inmate Wilkins was Pat Frisked by myself no Contraband was Found Inmate was Placed in the Downstairs holding Pen.

5-9-05   E. Cragle   C.O.
Report Date   Reported By (Print)   Signature   Title

5) Endorsements of other employee witnesses (if any)  SIGNATURES: 1. _____ 2. _____ 3. _____

NOTE: Fold back Page 2 on dotted line before completing below.

6) Were other inmates involved?  Yes/No̶   If yes, give name & # _____

7) At the time of this incident was inmate under prior confinement/restriction  Yes/N̶o̶ or
As a result of this incident was inmate confined/restricted  Yes/No̶  F/L Pending LT Barrett

8) Was inmate moved to another Housing Unit?  Yes ___ No ___
If yes, (a) Current Housing Unit  INF Room 3   (b) Authorized by LT Barrett

9) Was physical force used?  Yes̶/No̶   (If yes, file Form 2104)   Area Supervisor Endorsement _____

DISTRIBUTION: White - Disciplinary Office

FORM 1595 (6/99)

(Supersedes Form I-8)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

**INMATE INJURY REPORT**

| Facility FPCF | Date of injury 5-9-08 | Time of injury 2:30 pm | Place of injury 8 Block Yard Entrance |
|---|---|---|---|
| Inmate name Koran Wilkins | DIN# 04A-2326 | | Locking location 08-C2-35B |

What was inmate doing when injured?

Coming in from yard

Cause of injury?

Cut on Right side of Face

Inmate's statement:

I told a lot of staff here that I needed P.C. I
went to P.C. But they kicked me out. I also
told them names and I had a problem with ~~staff~~
the bloods

Koran Wilkins

Inmate's Signature                    Date

Witnesses

| Reporting Employee Kappa | Title S6T |
|---|---|

**FACILITY HEALTH SERVICES REPORT**

| Date reported for medical treatment: 5-9-05 | Time: AM/PM 3:15 pm |
|---|---|

Nature of Injury:

Face Laceration -
Right cheek 1½", 1¼" under Right ear lobe -
1" abrasion Right neck

Treatment Provided: Sutured + Steri stripped by DR. Weinstock

| Was inmate admitted to facility infirmary? yes ☐ no ☑ | Outside hospital? yes ☐ no ☑ | If yes, where? |
|---|---|---|

Name and title of person furnishing treatment at facility:

Signature D. Yeomans

Title RN

This form is to be forwarded to the Fire & Safety Officer within 24 hours for review and filing.

FORM #2077 (Rev. 8/01)          NEW YORK STATE - DEPARTMENT OF CORRECTIONAL SERVICES
**CONTRABAND RECEIPT**

DATE/TIME 5/9/05  4⁰⁰ P.M.

Five Points   **CORRECTIONAL FACILITY**

LOCATION 8-C-2-35B

Original - Inmate
Copy  - D.S.S.

OFFICER CONDUCTING SEARCH
SIGNATURE

INMATE NAME: Wilkins

DIN# 04A2326

PRINT NAME T. SUDA

☑ NO CONTRABAND FOUND     ☑ NO PROPERTY DAMAGED DURING SEARCH

| ITEMS CONFISCATED OR DAMAGED | WHERE FOUND | COMMENTS |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DISPOSITION OF ITEMS LISTED

PERSON RECEIVING ITEMS
SIGNATURE

YOU MAY WRITE TO THE DEPUTY SUPERINTENDENT FOR SECURITY WITHIN 7 DAYS
OF THIS RECEIPT REGARDING THE CONFISCATION OR DISPOSITION OF THESE ITEMS.

PRINT NAME

---

FORM #2077 (Rev. 8/01)          NEW YORK STATE - DEPARTMENT OF CORRECTIONAL SERVICES
**CONTRABAND RECEIPT**

DATE/TIME 5/9/05  4²⁰ P.M.

Five Points   **CORRECTIONAL FACILITY**

LOCATION 8-C-2-35T

Original - Inmate
Copy  - D.S.S.

OFFICER CONDUCTING SEARCH
SIGNATURE

INMATE NAME: GARDNER

DIN# 04B2166

PRINT NAME T. Conano

☑ NO CONTRABAND FOUND     ☑ NO PROPERTY DAMAGED DURING SEARCH

| ITEMS CONFISCATED OR DAMAGED | WHERE FOUND | COMMENTS |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

DISPOSITION OF ITEMS LISTED

PERSON RECEIVING ITEMS
SIGNATURE

YOU MAY WRITE TO THE DEPUTY SUPERINTENDENT FOR SECURITY WITHIN 7 DAYS
OF THIS RECEIPT REGARDING THE CONFISCATION OR DISPOSITION OF THESE ITEMS.

PRINT NAME

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

___FIVE POINTS___ CORRECTIONAL FACILITY

**VOLUNTARY PROTECTIVE CUSTODY STATUS CONSIDERATION FORM**

NAME ___WILKINS, KORAN___   DIN __04A2326__   REQUEST DATE __5-9-05__

EMPLOYEE RECEIVING REQUEST ___A. KAPA___   SGT.
<div style="text-align:center">NAME</div> <div style="text-align:center">TITLE</div>

**SECTION A**

SUMMARY OF REASONS FOR VOLUNTARY PROTECTIVE CUSTODY REQUEST
(TO BE COMPLETED BY EMPLOYEE RECEIVING REQUEST)

__INMATE WAS CUT ON RT. SIDE OF FACE DURING YARD GO BACK WITH__
__RAZOR TYPE WEAPON, WAS PREVIOUSLY IN P.C. AND CONTINUES TO__
__HAVE PROBLEMS WITH GANG MEMBERS.__

INMATE'S SIGNATURE ___Koran Wilkins___   DATE __5/9/05__

AFTER COMPLETION OF SECTION A, FORWARD FORM AND RELATED DOCUMENTS TO APPROPRIATE OFFICE FOR FURTHER ACTION.

**SECTION B**   **INTERVIEW**

Upon receipt of a protective custody request, the inmate shall be interviewed by a correction counselor or supervisory level employee. Available records shall also be reviewed.

INTERVIEWER'S COMMENTS AND RECOMMENDATION REGARDING PROTECTIVE CUSTODY REQUEST.

INTERVIEWED BY _____   TITLE _____   DATE _____

AFTER COMPLETION OF SECTION B, FORWARD FORM AND RELATED DOCUMENTS TO SUPERINTENDENT'S OFFICE FOR FINAL DETERMINATION.

**SECTION C**   **SUPERINTENDENT'S DETERMINATION**

_____ ASSIGN TO PROTECTIVE CUSTODY STATUS

_____ DO NOT ASSIGN TO PROTECTIVE CUSTODY STATUS

_____   _____
SUPERINTENDENT'S SIGNATURE   DATE

**NOTICE TO INMATE:**

If assigned to Protective Custody status, you may at any time make a written request to the Superintendent for a reassignment to general population. Such request shall be evaluated and within 14 days you shall either be reassigned or be subject to a hearing conducted in accordance with the provisions of 7NYCRR Part 254 to determine the need for assignment to Involuntary Protective Custody status.

White - Superintendent
Yellow - Inmate
Pink - Central Office, Special Housing
Gold - Guidance Unit
FORM 2183 (REV. 10/94)

Form 2062 (2/87)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

# REQUEST FOR URINALYSIS TEST

Facility _Five Points_      Test # _____

Inmate Name _Wilkins, Koran_      Number _04A2326_ Cell _8-C2 - 35-B_

Request made by _Sgt D. McClellan_      Date _5/9/05_

Agent(s) suspected (if any) _full scan_

Circumstances leading to request _inmate involved in altercation in 8 Block_
_yard inmate appeared disoriented during interview_

Test approved by _____ Date _____

Inmate told the underlying reason why he is being ordered to submit a urine specimen

(circle one:   Suspicion      Routine       Random   )

By _____ Date _____ Time _____

Has inmate taken medication recently?  (  YES  or  NO  ) Specify _____

Inmate ordered to submit specimen:      Date _____ Time _____

Specimen witnessed and obtained by _____ Date _____ Time _____

Does inmate willfully refuse to submit specimen?  (  YES  or  NO  )

Does inmate claim to be unable to submit specimen?  (  YES  or  NO  )   Date _____ Time _____

If inmate claims to be unable to submit specimen, has inmate been given at least three hours to submit specimen?

   ( YES  or  NO  )

Specimen tested by (1st Test) _____ Date _____ Time _____

Results _____

Specimen tested by (2nd Test) _____ Date _____ Time _____

Results _____

**Chain of Custody (Starting with staff obtaining specimen. Attach additional pages if necessary.)**

From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____
From _____ To _____ Date _____ Time _____

This form is to be filled out **completely**. It is to accompany the specimen until the specimen is tested.

If the specimen is positive, a **Misbehavior Report** shall be written.

FP031 (09/00)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
**FIVE POINTS CORRECTIONAL FACILITY**
**MEMORANDUM**

TO: _LT. BARRETTE_____ ,**Watch Commander**

FROM: _Co SCHMELZLE_____

DATE: _8/9/05_____

SUBJECT: ~~Use of Force~~ / UI Inmate Photographs   _05-0035_

On the above date, at approximately _400_____ ~~a.m.~~/(p.m.,) took the following photographs of

inmate _WILKINS, K_____ DIN _04A2326_____.

The photographs were taken at the following location: _INFIRM_____.

Check off each view when taken:

☐ #1 Front View    ☐ #2 Back View    ☐ #3 Right Side View    ☐ #4 Left Side View

Briefly describe each injury photograph:

_TWO CUTS ON RIGHT CHEEK_

_____

_____

_____

_____

_____

_____

_____

Number of sets of photos: _2_____    Number of photos per set: _4_____

Photographs taken by: _Schmelzle_____    _SCHMELZLE Co_____
                          Signature                              Print Name & Title

| Front View 75% of View Finder | Back View 75% of View Finder | Rt. Side View 75% of View Finder | Lt. Side View 75% of View Finder | Photo of Each Injury 75% of View Finder |
|---|---|---|---|---|

NAME: WILKINS, K

DIN#: 04A2326

DATE & TIME: 5-9-05   400 Pm

LOCATION: INFIRM

PHOTOS BY: SCHMELZLE CO

UI or #: 05-0035











Wilkins,K, 04A2326, 5/9/05, 445pm,

Schmelzle CO, UI# 05-0035, Found in 8 block yard



FP026 (08/00)

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONAL SERVICES
**FIVE POINTS CORRECTIONAL FACILITY**
**MEMORANDUM**

**TO:** SGT McClellan

**FROM:** E. Crague, C.O

**DATE:** 5-9-05

**SUBJECT:** UI # 05-0035 (Inmate Wilkins 04A2396)

On the above date at approx 2:35pm I was positioned on the end of 8
B1. Highside Gallery to observe 8 buildings upperdeck go back from
the 8 building yard. I noticed inmate Wilkins 04A2326 walking through
the B1 yard door with his knit cap on and pulled low over his right cheek.
When inmate Wilkins exited the gallery I gave him a direct order
to come to where I was standing he ignored me. I then gave him
a second direct order to stop and to walk over to me. This time he
looked at me but still refused to comply. I gave him a third direct order
and started to walk towards him when he finally complied. As he approached
me I gave him a direct order to remove his knit hat to which he complied.
As he took off his hat I observed what appeared to be a cut on his
upper right cheek. I immediately placed inmate Wilkins on the wall in
the pat frisk position and notified SGT McClellan. During the course of
the yard go back approx 60 inmates were present when I confronted
inmate Wilkins several inmates stopped and/or slowed down to watch what
was happening. Inmate Wilkins was pat frisked by my self and placed into the
lower deck holding pens.

Respectfully submitted by

E. Crague. C.O.

White Copy    - Addressee
Yellow Copy  - Office Use
Pink Copy    - Employee Making Report

FP026 (08/00)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
**FIVE POINTS CORRECTIONAL FACILITY**
**MEMORANDUM**

TO: SGT. D. McClellan

FROM: C.O. J. Villeneuve

DATE: 5/9/05

SUBJECT: Weapon   Wilkins 04A2326

AT Approximately 2⁴⁵p staff IN 8 block went to the block yard to Pat Frisk the Inmates coming In, As a result of a cutting of an Inmate.

THE Location of the weapon was Approximately 6"Inches to the Left of the wheelchair ramp as you walk Into the yard, on the ground.

THE Weapon Appears to be a Can top Lid. THE blade portion of the Lid has been Cut to have a serrated type cutting edge. THE metal Lid is wrapped with what Appears to be a envelope. THE envelope is wrapped with clear plastic tape. THE overall Length of the weapon is Approx 2" Inches In Length. The blade portion of the weapon is Approx ⅞" Inches In Length. Contraband was Photographed And Placed in The Class "A" Contraband Locker.

Respectfully

J. Villeneuve C.O.

White Copy  - Addressee
Yellow Copy - Office Use
Pink Copy  - Employee Making Report

FP010 (08/00)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES
FIVE POINTS CORRECTIONAL FACILITY
**FIGHT INVESTIGATION REPORT**

Watch Commander                                   DATE: 5/9/05

FROM: Sgt. D. McClellan

1. (a) _Wilkins Koran   04A2326   8-C2-3___
   Inmate Name & Number          Cell Location          Aggressor: ☐ Yes  ☐ No  ☑ Unk

   (b) _Unknown_____
   Inmate Name & Number          Cell Location          Aggressor: ☑ Yes  ☐ No  ☑ Unk

2. Location of Incident: _8 Block yard_          Date: _5/9/05_   Time: _2³⁰ pm_

3. Was force Used:  ☐ Yes  ☑ No

4. Has medical attention been given to inmate?   (a) ☑ Yes  ☐ No  ☐ Refused
                                                  (b) ☑ Yes  ☐ No  ☐ Refused

5. Describe any injuries: (a) _Two lacerations on Right cheek - closed 1¼", 1" abrasion Rt. Neck_
                          (b) _N/A_

6. Was a weapon involved? (a) ☐ Yes  ☑ No   Description: _____
                          (b) ☑ Yes  ☐ No   Description _Can top lid with notches -_

7. Have pictures of the weapon(s) been taken? ☑ Yes  ☐ No

8. Where is the weapon(s) now? (a) _N/A_          (b) _Class A Evidence locker_

9. Does inmate(s) want protection? (a) ☑ Yes  ☐ No   (b) ☐ Yes N/A ☐ No

10. Does inmate(s) want to press charges? (a) ☑ Yes  ☐ No   (b) ☐ Yes N/A ☐ No

11. Inmate(s) explanation(s): _Inmate Wilkins says inmate cut him by yard door._
    _also said inmate was a "blood". He knows the inmate by sight, not by_
    _name._

12. Sergeant's assessment (conclusion): _Inmate claims he wants to press charges, but_
    _cannot or will not identify attacker._

cc: Deputy Supt. of Security
    Unusual Incident Packet                                    Sergeant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------

KORAN WILKINS,

                Plaintiff,

      -v-

SUPERINTENDENT THOMAS M. POOLE;
COMMISSIONER GLENN S. GOORD;
DEPARTMENT SUPERINTENDENT DAVID
F. NAPOLI; HEAD COUNSELOR FRANK
RHODES; SERGEANT THOMAS HAPPELL;
SERGEANT JAMES M. MINDE; CAPTAIN
GRAFTON ROBINSON; CORRECTIONS
COUNSELOR ROBERTO BELMONTE,
collectively in their individual and official
capacities,

              Defendants.
------------------------------------------------------------

**JURY TRIAL DEMANDED**

------------------------------------------------------------

Paul, Weiss, Rifkind, Wharton & Garrison LLP

## Attorneys for Plaintiff

ATTORNEYS AT LAW
1285 AVENUE OF THE AMERICAS o NEW YORK, NY 10019-6064
(212) 373-3000

All communications should be referred

to         Kristy M. Tillman