UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KORAN WILKINS,

                                    Plaintiff,

                                                                         DECISION AND ORDER

                                                                         08-CV-6207L

                    v.

SUPERINTENDENT THOMAS M. POOLE,
COMMISSIONER GLENN S. GOORD,
DEPARTMENT SUPERINTENDENT DAVID F. NAPOLI,
HEAD COUNSELOR FRANK RHODES,
SERGEANT THOMAS HAPPELL,
LIEUTENANT JAMES M. MINDE,
CAPTAIN GRAFTON ROBINSON,
CORRECTIONS COUNSELOR ROBERTO BELMONTE,

                                      Defendants.
_____

       Plaintiff Koran Wilkins ("Wilkins") commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, a former inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that defendants Superintendent Thomas Poole, Commissioner Glenn Goord, Department Superintendent David Napoli, Head Counselor Frank Rhodes, Sergeant Thomas Happell, Lieutenant James Minde, Captain Grafton Robinson, and Corrections Counselor Roberto Belmonte, all of whom at all relevant times were officials or employees of DOCS, violated his Eighth Amendment constitutional rights by failing to protect him from a gang-related attack at Five Points Correctional Facility ("Five Points") on May 9, 2005. Specifically, Wilkins alleges that

despite having warned defendants on multiple occasions that protective custody was needed to protect him from repeated threats of violence by specific prison gang members, defendants refused to extend his initial grant of protective custody, failed to adequately staff housing units and common areas to prevent an attack, and failed to implement weapons control policies sufficient to prevent the attack.

Defendants have moved to dismiss the equal protection and failure-to-protect claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also ask the Court to consider whether plaintiff's counsel is subject to disqualification based upon the potential that counsel will be called as a necessary witness at trial. For the reasons set forth below, defendants' motion to dismiss Wilkins' claims against the supervisory defendants, as well as his claims concerning staffing and weapons policies, is granted, and defendants' request for disqualification of plaintiff's counsel is denied.

## FACTUAL BACKGROUND

In early 2005, Wilkins was transferred to Five Points, and placed in the general population. In early March 2005, Wilkins began to receive threats from certain members of the "Bloods" gang who were incarcerated with him, based upon an earlier altercation between Wilkins and a Bloods member, known as "Hollywood," who had been transferred to Five Points in late February and was assigned to Ten Block. On March 4, 2005, Wilkins notified staff that he feared for his safety. He was moved to Nine Block, but refused to leave his cell for fear of attack. On March 10, 2005, Wilkins made a written request for protective custody, which was granted.

On March 15, 2005, defendant Lieutenant Minde submitted a memorandum to his superior, Lieutenant Byrne, noting that Wilkins believed he was "being plotted against," and identifying Hollywood as the source of the threats. Minde did not, however, recommend additional protective custody for Wilkins. (Dkt. #1 at ¶22).

On March 17, 2005, Wilkins' counsel, at that time representing him in a criminal appeal, wrote a letter to defendant Head Counselor Rhodes, asking that Wilkins be permitted to remain in protected custody, based upon the threats to his safety posed by the Bloods.

That request was evidently denied, and Wilkins was ordered to return to the general population on March 21, 2005. Wilkins refused, stating he feared he would be "cut by the Bloods" if he reported to Eight Block as instructed. Wilkins asked to speak with a counselor, and in an interview with defendant Corrections Counselor Belmonte, described the threats against him. Wilkins alleges that Belmonte replied that Wilkins could not return to protective custody unless "something . . . happen[ed] to him." (Dkt. #1 at ¶25).

Wilkins' refusal to return to the general population resulted in discipline for insubordination. On March 21, 2005, defendant Sergeant Happell indicated that Wilkins stated he thought he "would be cut by the Bloods" if he was forced to reside on Eight Block. (Dkt. #1 at ¶26).

On March 27 and 29, 2005, Wilkins attended a disciplinary hearing on the charge of failure to obey the order that he return to the general population. At the hearing, which was conducted by defendant Captain Robinson, Wilkins described the threats against him and identified two known Bloods who resided on Eight Block, whom he feared Hollywood, located in Ten Block, would order to attack him. At the conclusion of the hearing, Captain Robinson denied Wilkins' request for

protective custody on the grounds that he was to be returned to Eleven Block instead of Eight Block, and would not have occasion to "comingle" with the Eight Block inmates whom he had identified. (Dkt. #1 at ¶30).

Believing that he might still encounter the Eight Block inmates once he returned to general population, Wilkins again refused to return, and was sent to solitary confinement until May 4, 2005. While there, he again interviewed with Counselor Belmonte and repeated the threats against him.

Upon his release from solitary confinement, Wilkins was moved to Eight Block, where the Bloods he had previously identified were residing. On May 9, 2005, as Wilkins was returning to his cell from the yard (a time known as "go-back time," when Wilkins alleges inmates are particularly vulnerable due to a lack of corrections officers in the yard and on the block), he was approached from behind by another inmate and slashed across the face with a shank. The attack was observed by a corrections officer, and Wilkins was sent to the medical unit, where he received 23 stitches in his face to close a four-inch gash. Corrections officers later found the shank, fashioned from a serrated tin can lid with a paper handle, in the Eight Block yard. After an investigation by Five Points, an inmate by the name of Hall, a known Bloods member who resided on Eight Block, was found to be the perpetrator.

After a three day stay in the medical unit, Wilkins was placed in protective custody. On or about July 29, 2005, Wilkins was transferred to another facility, and was subsequently paroled.

Wilkins alleges that each of the defendants showed deliberate indifference to the threats against him, and thus violated his constitutional rights by failing to move him to protective custody. He also alleges that the defendants failed to protect him when they assigned him to Eight Block

following his solitary confinement, even though it was widely known that the threat to Wilkins' safety had been made by two Eight Block inmates. Wilkins further alleges that defendants showed deliberate indifference to his constitutional rights by failing to regularly search inmates and their cells for shanks and other weapons, and by failing to adequately staff the yard and block to prevent assaults during "go-back" time.

## DISCUSSION

**I**.     **Standard of Review**

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must presume all facts alleged in the complaint to be true, and will draw all reasonable inferences in the plaintiff's favor. *See Equal Employment Opportunity Comm'n v. Staten Island Savings Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II.**     **Plaintiff's Claims Against Retired Commissioner Goord, Retired Superintendent Poole, and Former Deputy Superintendent Napoli**

Plaintiff contends that defendants DOCS Commissioner Goord, Five Points Superintendent Poole and Five Points Deputy Superintendent Napoli (collectively, the "supervisory defendants") have violated his right to equal protection. That claim must be dismissed as to those defendants.

The Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't. of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996), *citing Farmer v. Brennan*, 511 U.S. 825, 832-33, (1970). Thus, pursuant to Section

1983, prison officials may be held liable for an inmate's injuries if the officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). In order to demonstrate such deliberate indifference, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d 614 at 620. *See also Warren v. Goord,* 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007).

In addition to knowledge of the threat of danger to the inmate, personal involvement is also necessary to state a claim for failure to protect against prison officials. The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in the supervision of subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights on inmates by failing to act on information that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

While alleging generally that all of the defendants exhibited deliberate indifference to the threats against him, Wilkins makes no specific factual allegations concerning the supervisory defendants, beyond the conclusory statement that the defendants collectively should have implemented a more comprehensive weapons control policy or staffed the yard and blocks more

heavily during "go-back" time. *See e.g., Smith v. Goord*, 2008 U.S. Dist. LEXIS 9958 at *8 (W.D.N.Y. 2008) (conclusory allegations of failure to protect against a supervisory defendant, premised solely upon the assumption that a person in a supervisory capacity with general awareness of dangerous prison conditions must have been able to infer the specific threat to the plaintiff, are insufficient to state a claim); *Wright v. Goord*, 2006 U.S. Dist. LEXIS 22945 at *21 (N.D.N.Y. 2006) (granting summary judgment in favor of supervisory defendants where there are no allegations or evidence that the supervisors were directly involved in the alleged constitutional violations). Wilkins does not allege that any of the supervisory defendants were responsible to implement such policies, let alone that any of the supervisory defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" to Wilkins or other inmates, and that such an inference was in fact drawn. *Warren*, 476 F. Supp. 2d 407 at 410.

Accordingly, Wilkins has failed to state a claim against the supervisory defendants which raises his right to relief above a speculative level, and his claims against those defendants must be dismissed.

### III. Plaintiff's Claims Concerning DOCS' and/or Five Points' Weapons Control Policy and Staffing

Wilkins alleges that, "the Defendants showed deliberate indifference by failing to implement an adequate weapons control policy by regularly searching inmates and their cells for shanks and other weapons." (Dkt. #1 at ¶46). He further alleges that, "the Defendants showed deliberate indifference by failing to ensure a sufficient number of guards in the yard and on the block to prevent an inmate-on-inmate assault with a weapon during 'go-back' time." (Dkt. #1 at ¶47). These claims, too must be dismissed. Wilkins makes no allegation that any of the defendants is responsible for,

or involved in any way with, Five Points' staffing and weapons policies. Moreover, his generalized allegation that "[p]rison is an exceedingly dangerous place," (Dkt. #1 at ¶2) even assuming *arguendo* that the defendants were equally aware of the general dangers of prison life, is insufficient to state a claim, in the absence of some allegation that the defendants were aware of specific deficiencies in Five Points' policies and failed to act, despite knowledge that "a substantial risk of attacks in the yard was pervasive and well-documented." *See Coronado v. Goord*, 2000 U.S. Dist. LEXIS 13876 at *13 (S.D.N.Y. 2000), *citing Ayers v. Coughlin*, 780 F.2d 205, 219 (2d Cir. 1985).

Because Wilkins has not alleged that any of the defendants had sufficient knowledge and/or involvement with Five Points' weapons and staffing policies to draw an inference that those policies posed a substantial risk of harm, or that any of the defendants had the authority to effect such policies, his claims relative to those policies must be dismissed.

### IV. Disqualification of Plaintiff's Counsel

Defendants also request that the Court consider the potential disqualification of plaintiff's counsel, on the grounds that she might eventually be called as a witness at trial. I decline to do so. Initially, defendants' motion is one for dismissal of some of Wilkins' claims pursuant to Fed. R. Civ. Proc. 12(b)(6), and thus the examination of trial-related disqualification issues is irrelevant and premature. In any event, defendants make no showing that disqualification is necessary at present. Although plaintiff's complaint refers to a letter written by his counsel to one of the defendants to support his claim that one or more defendants were aware of the threats against him, he does not allege that counsel ever had any personal contact with the defendants, nor is there any other evidence to suggest that plaintiff's counsel would, be a necessary witness at trial upon any "significant issue."

*See* New York Lawyer's Code of Professional Responsibility, D.R. 5-102. Defendants' request for disqualification of plaintiff's counsel is therefore denied.

## CONCLUSION

Defendants' motion to dismiss (Dkt. #15) is granted, and plaintiff's claims are dismissed in part. Plaintiff's claims against Superintendent Thomas Poole, Commissioner Goord, and Deputy Superintendent Napoli are dismissed in their entirety, with prejudice. Plaintiff's claims concerning the defendants' alleged collective failure to implement adequate weapons policies, and/or to adequately staff the yard, are also dismissed, with prejudice. Defendants' request for disqualification of plaintiff's counsel is denied, without prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
March 30, 2010.